U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
NOV - 3 2011
CLERK, U.S. DISTRICT COURT
by_____
       Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FORREST DeSMIT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:11-CV-360-A |
| | § | |
| DFW INTERNATIONAL AIRPORT BOARD, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the motion of defendant, DFW International Airport Board,[1] for judgment on the pleadings to dismiss the first amended complaint of plaintiff, Forrest DeSmit, acting pro se, for failure to state a claim upon which relief may be granted. After having considered such motion, plaintiff's response, defendant's reply, and applicable legal authorities, the court has concluded that defendant's motion should be granted.

I.

Background

Plaintiff instituted this action by filing a complaint on May 31, 2011, against defendant. After reviewing plaintiff's

---

[1] Plaintiff names DFW International Airport as defendant, but defendant appears in its pleadings as DFW International Airport Board.

complaint, the court concluded that it failed to state a claim upon which relief may be granted and that plaintiff should replead. In a June 7, 2011 order, the court ordered that if plaintiff wished to pursue this action further, he file an amended complaint that alleges facts supporting each element of the causes of action he wishes to assert against defendant.

In his amended complaint filed on July 1, 2011, plaintiff alleged claims against defendant for intentional infliction of emotional distress; for retaliation under the Family Medical Leave Act ("FMLA"); for refusal to accommodate under the Americans with Disabilities Act ("ADA") and under Section 503 of the Rehabilitation Act ("Rehabilitation Act"); for violations of the Uniform Services Employment and Reemployment Rights Act ("USERRA"), of the Vietnam Era Veterans Readjustment Assistance Act ("VEVRAA"),[2] and of "Affirmative Action policies." Plaintiff sought $300,000 in damages and requested as further relief that the airport "comply with [his] Reasonable Accommodation request," that airport administration be "retrained . . . on the laws," and that plaintiff "be involved in this training." Am. Compl. at 4, ¶ 8.

---

[2] Plaintiff alleged that defendant violated the "Vietnam Era of the Rehabilitation Act of 1973." Am. Compl. at 2, ¶ 2. The court takes these allegations to mean that plaintiff's claims fall under the Vietnam Era Veterans Readjustment Assistance Act ("VEVRA").

2

At bottom, the thrust of plaintiff's complaint is that "[d]efendant willfully and intentionally discriminated" against him. Id. at 1. As background for his allegations, plaintiff stated that he is a current employee of defendant, a "Disabled Veteran, a person with disabilities, and a Native American." Id. His first claim appears to state a violation under the FMLA:

1. Plaintiff was approved by the Defendant for intermittent FMLA leave on 11/06/09. On 6/30/10, Plaintiff was written up by the Defendant for absenteeism. This resulted in an adverse employment action, retaliation, and intentional infliction of emotional distress and mental anguish. This violated the Plaintiff's protected rights under FMLA.

Id., ¶ 1.

Plaintiff's other claims of statutory violations were based on the following conduct:

2. On 07/07/10, Plaintiff made a request for Reasonable Accommodation. Defendant requested medical documentation. Plaintiff submitted medical documents from the Veteran Administration and a document from an ARD meeting. Defendant stated that they needed more medical documents and gave the Plaintiff a document to be filled out of by the Plaintiff's primary health care physician. Plaintiff complied with Defendant's demands. Defendant again stated that they needed more medical documentation. Defendant then sent the Plaintiff to a Psychiatric Hospital for evaluation. Plaintiff was charged for the evaluation, even after notifying the Defendant a number of times that this act is not allowed by law. Plaintiff also requested that the Defendant and the Plaintiff make a conference call to the Job Accommodation Network for assistance with the Reasonable Accommodation request. Defendant declined the request. After the Psychiatric evaluation, which lasted for approximately two and a half weeks, the Defendant declined

3

> the Plaintiff's request for Reasonable Accommodation on the grounds that it would create an undue hardship for the Defendant. The above act is in violation of the ADA, Affirmative Action Policies, Section 503 of the Rehabilitation Act of 1973, USERRA, EEO, and the Vietnam Era of the Rehabilitation Act of 1973, and fails to perform its legal obligations.

Id. at 2, ¶ 2.

As plaintiff alleged, when he returned to work for defendant on September 20, 2010, he was told "to go home until further notice," thus "result[ing] in intentional infliction of emotional distress, mental anguish, and discrimination against [him]." Id. Plaintiff alleged that furthermore, "[d]efendant intentionally and willfully refuses to comply with the Affirmative Action policies which are required by law," and as support for this contention he recited nine paragraphs from what appears to be an affirmative action policy. Id. at 2-4, ¶ 6.

II.

Analysis

A. Pleading Standards

Motions for judgment on the pleadings are subject to the same standard of review as motions to dismiss for failure to state a claim. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313, n. 8 (5th Cir. 2002). Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standards of pleading that governs

4

the complaint. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. See Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 129 S. Ct. at 1950. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a

plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

The court concludes that the allegations of the complaint fall short of the Rule 8(a)(2) standards, as they have been interpreted by the Supreme Court in Twombly and Iqbal. The court agrees with defendant that the allegations in the complaint are nothing more than conclusory assertions that defendant discriminated against plaintiff and that the complaint contains inadequate factual allegations to support the asserted claims or causes of action and is therefore insufficient to give defendant notice of plaintiff's claims against it.

B.  Applying the Standards to the Complaint

The court first considers plaintiff's claims for violations of FMLA; and then turns to his claim for violations of the ADA and the Rehabilitation Act; his claims for violations of USERRA, VVRAA, and what he terms as "Affirmative Action Policies"; and finally his claim for intentional infliction of emotional distress.

1.  FMLA Claim

The FMLA makes it unlawful for an employer to discharge an employee for exercising or seeking to exercise the benefits statutorily conferred. 29 U.S.C. § 2615(a)(2). To establish a

6

prima facie case for retaliation under the FMLA, plaintiff must demonstrate that (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and (3) either (a) he was treated less favorably than an employee who had not requested FMLA leave, or (b) the adverse employment decision was made because of her request for FMLA leave. Bocalbos v. Nat'l W. Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998).

None of these elements have been sufficiently pleaded by plaintiff. First, plaintiff has not alleged facts from which the court could conclude that he was engaging in protected activity under the FMLA and that he had entitlement to FMLA leave. See 29 U.S.C. § 2612(a) (listing the eligibility requirements for determining an employee's entitlement to leave). On this element, plaintiff has not alleged that he had a "serious health condition" that made him "unable to perform the functions of [his] position," see 29 U.S.C. § 2612(a)(1)(D) (2006); nor has he alleged any type of serious health condition he faced or that any condition qualified under the protected categories of 29 C.F.R. § 825.112-115.

Second, plaintiff's allegation concerning the "write-up" for "absenteeism" is insufficient to establish an adverse employment action for purposes of a FMLA claim. The Fifth Circuit has held that a written disciplinary warning alone is not an adverse

7

employment action for purposes of a retaliation claim. See Dehart v. Baker Hughes Oilfield Operations, Inc., 214 F. App'x 437, 442 (5th Cir. 2007) (unpublished). Plaintiff does not provide any factual support to show that the warning could "have reasonably dissuaded [him] from making or supporting a charge of discrimination." Id. And moreover, plaintiff has not shown that a period of over seven months sufficiently establishes temporal proximity between the date of the requested leave and the date of the write-up.[3] See Ajao v. Bed Bath & Beyond, Inc., 265 F. App'x 258, 265 (5th Cir. 2008) (per curiam) (unpublished) (a four-month gap was insufficient to establish temporal proximity). Thus, the court concludes that plaintiff has failed to a state a claim under the FMLA upon which relief can be granted.

2. ADA Claims and Rehabilitation Act Claims

The court now considers plaintiff's claims alleging violations of the ADA and the Rehabilitation Act. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to [the] . . . advancement, [or] discharge of employees, . . . and other terms conditions, and privileges of employment." 42 U.S.C. § 12112(a). In his attempt

---

[3] Plaintiff alleges that a June 30, 2010 "write up" resulted from a November 6, 2009 FMLA leave.

to prevail under the ADA, however, plaintiff, has not alleged any facts to show that: "1) he has a 'disability'; 2) he is 'qualified' for the job; and 3) an adverse employment decision was made solely because of his disability." Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1092 (5th Cir. 1997) (per curiam); 42 U.S.C. §§ 12102(2), 12111(8). The court cannot even discern from the pleadings what position of employment plaintiff currently holds with defendant, much less whether he is qualified to perform the requirements of that position. In sum, plaintiff has not stated a claim under the ADA because he has failed to allege that he suffers or suffered from a covered disability, or that he is a qualified individual with a disability who can perform the essential functions with a reasonable accommodation. See Burch v. City of Nacogdoches, 174 F.3d 615, 621 (1999).

For the same reasons, plaintiff's allegations under the Rehabilitation Act fail to state a claim for relief. Moreover, he has not alleged any facts to meet the Rehabilitation Act's heightened causation standard, to show that the alleged discrimination occurred "solely by reason of her or his disability." See 29 U.S.C. § 794(a) (emphasis added); Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005). Accordingly, the court concludes that plaintiff's ADA and


Rehabilitation Act claims fail to state a claim upon which relief can be granted.

    3.   <u>USERRA, VEVRAA, and Affirmative Action Claims</u>

The court next turns to plaintiff's allegations concerning violations of the USERRA, VEVRAA, and the "Affirmative Action Policies." USERRA prohibits discrimination against the employment of individuals who are veterans, in the following manner particularly relevant to plaintiff's case: A veteran "shall not be denied . . . any benefit of employment by an employer" on the basis of his status as a veteran. 38 U.S.C. § 4311(a).[4] Plaintiff, however, has not alleged what actionable "benefit of employment" under USERRA defendant allegedly denied him because of his alleged veteran status. See <u>Carder v. Cont'l Airlines, Inc.</u>, 636 F.3d 172, 175-76 (5th Cir. 2011) (citing 38

---

[4]Section 4311(a) of the statute states the following:
A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or <u>any benefit of employment</u> by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
38 U.S.C. § 4311(a) (emphasis added).
    In a separate section, the statute defines "benefit of employment":
The term "benefit", "benefit of employment", or "rights and benefits" means any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.
38 U.S.C. § 4303(2).

U.S.C. § 4303(2)).  In other words, plaintiff has not alleged any facts to show what benefit of employment--whether it be an advantage, profit or privilege of employment--he was denied.  38 U.S.C. § 4311(a), 4303(2).

As for his VEVRAA claim, plaintiff has not alleged any facts to establish that statute's application in this case.  See 38 U.S.C. § 4214.  VEVRAA requires that certain federal contractors include in their contracts with the federal government a provision for an affirmative action policy to employ and advance in employment "qualified covered veterans."  Id. § 4214(a)(1).  Plaintiff has not alleged that defendant is a federal contractor, or that plaintiff is a "qualified" covered veteran capable of "perform[ing] the essential functions of the position with or without reasonable accommodation for an individual with a disability."  Id. § 4212(a)(3).  In fact, plaintiff has alleged no action taken by defendant that plaintiff believes was predicated on his alleged veteran status.

Plaintiff's claim for violation of "Affirmative Action Policies" is also devoid of any factual support.  In his complaint, plaintiff included portions of what appears to be an affirmative action policy, but it is unclear what the source of this policy is or whether defendant has even adopted this policy.  Thus, plaintiff alleges no facts which raise a claim upon which

11

relief can be granted. These allegations are merely conclusory assertions that defendant violated certain policies and, consequently, lack any facts that would permit the court to draw the reasonable inference that defendant violated any of the laws listed in the complaint. Accordingly, the court concludes that plaintiff has not pleaded any actionable claims under the USERRA, VEVRAA, or the described "Affirmative Action Policies."

    4.   <u>Intentional Infliction of Emotional Distress</u>

The court now turns to plaintiff's intentional infliction of emotional distress claim, and concludes that plaintiff has not alleged any facts in support of a cause of action for intentional infliction of emotional distress. See <u>Hoffmann-La Roche, Inc. v. Zeltwanger</u>, 144 S.W.3d 438, 445 (Tex. 2004) (a plaintiff must establish that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe"). Even if he had pleaded facts in support of those elements, defendant's governmental immunity is not waived for alleged intentional torts and thus bars any recovery on plaintiff's intentional tort theory. <u>See</u> Tex. Civ. Prac. & Rem. Code § 101.057(2).

C. <u>Conclusion</u>

For each of the reasons mentioned above, the court concludes that none of the allegations of the complaint states a claim upon which relief may be granted, and that, therefore, defendant's motion for judgment on the pleadings to dismiss plaintiff's first amended complaint should be granted.

III.

<u>Order</u>

The court ORDERS that all claims and causes of action asserted by plaintiff against defendant be, and are hereby, dismissed.

SIGNED November 3, 2011.

_____
JOHN McBRYDE
United States District Judge